**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARRY McKINNEY, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 20-1756 |
| CHESTER COUNTY, et al., | |
| *Defendants.* | |

**PAPPERT, J.**                                          **February 5, 2021**

<u>**MEMORANDUM**</u>

     Harry McKinney sued Chester County along with the Chester County Sheriff's Office and the County Office of the Controller, alleging they violated the Fair Labor Standards Act and Pennsylvania Minimum Wage Act. Defendants move to dismiss the Amended Complaint, strike certain paragraphs from it and for a more definite statement. The Court grants their Motion in part and denies in part for the reasons that follow.

I

A

     McKinney has been a Chester County Deputy Sheriff for thirteen years. (Am. Compl. ¶¶ 10(b), 39, ECF No. 21.) During that time, he worked as a K-9 Deputy, Master Trainer and K-9 handler for three dogs: Afra, Jessie and Melody. (*Id.* at ¶¶ 10(d), 41–43.) He cared for Afra from 2009 through April 30, 2019, Jessie from 2010 through January 6, 2020 and Melody from 2015 through January 6, 2020. (*Id.* at ¶¶ 44, 46, 48, 50, 52, 53.)

1

Pursuant to a K-9 Deputy Service Agreement, McKinney's K-9-related obligations were supplemental to his duties as a Deputy Sheriff.  (*Id.* at ¶¶ 14–15.) McKinney took on numerous additional responsibilities as a K-9 Deputy and handler, including: (i) being on call 24/7; (ii) training his dogs in patrol and explosives, narcotics tracking and comfort dog service; (iii) finding veterinary care and a pet food supplier; (iv) altering off-duty responsibilities or commitments to provide proper at-home care for his dogs, including bathing, brushing, exercising, feeding, grooming, medicating and transporting them; (v) using and maintaining the Sheriff's Office's K-9 vehicle; (vi) installing a fenced-in yard; and (vii) completing training and courses, maintaining professional K-9 affiliations and attending or instructing professional K-9 educational events. *See* (*id.* at ¶¶ 15, 47, 51, 55–57, 59–60, 62–63, 65–66).

According to McKinney, Chester County has a policy of compensating K-9 handlers for their time spent off-duty caring for the dogs.  (*Id.* at ¶¶ 16–17.)  The policy provides for compensating handlers for five hours per week, or forty-five minutes per day, in overtime or comp time (handlers can choose) for at-home care.  (*Id.* at ¶¶ 16–17.) Handlers can receive this compensation per dog.  (*Id.* at ¶ 16, Count I ¶ 21.)[1]  Thus, a handler of three dogs is eligible for up to fifteen hours of overtime or comp time pay per week. (*Id.* at Count I ¶ 15.)  McKinney also says a "President Judge agreed with the Deputies that they would be compensated at time and a half for any hours worked over

---

[1]    McKinney restarts paragraph numbers for allegations under the headings "Count One" and "Count Two" in his Amended Complaint.  Citations to Count I or Count II paragraphs are specified to differentiate between multiple paragraphs beginning with the same number throughout the Amended Complaint.  Citations to the Amended Complaint that do not begin with Count I or Count II refer to paragraphs that precede the "Count One" and "Count Two" headers.

eight hours in any day," but he does not allege who the judge was or whether this is part of the County's policy.  *See* (*id.* at ¶ 36).

McKinney alleges he has not received the compensation to which he is entitled for his at-home care of Afra, Jessie and Melody.  (*Id.* at ¶ 68.)  He provided at-home care every day and "worked forty hours per week and eighty hours per bi-weekly pay period generally," though not necessarily during weeks where he took standard holiday and vacation time.  (*Id.* at ¶¶ 30–33, Count I ¶ 13.)  He further alleges Chester County "engaged in a willful policy, pattern or practice of permitting and/or requiring [him] to perform work in excess of forty (40) hours of work per week."  (*Id.* at Count I ¶ 24.)  As an example of a work-week where he "worked in excess of 40 hours per week or 80 hours per bi-weekly pay period and was not compensated for overtime," he says during the pay period April 15, 2017 to April 28, 2017 he "worked 80 hours and was not compensated for 10 hours 'at-home' care at 1.5 times his hourly rate."  (*Id.* at ¶ 68.2.)

Chester County's bookkeeper calculated McKinney has been underpaid by thousands of dollars from 2017 to 2019, and McKinney asserts he continued to be underpaid through the end of his K-9 handler obligations on January 6, 2020.  *See* (*id.* at ¶¶ 19–21, 23–29, 71–79).  McKinney alleges Chester County was aware of its compensation policy for K-9 handlers as well as the FLSA's compensation requirements but "refused, failed or otherwise did not and/or would not pay" McKinney in accordance with County policy or the FLSA.  *See* (*id.* at ¶¶ 37–38, 70, Count I ¶¶ 22–23).

B

McKinney filed an Amended Complaint on October 5, 2020 alleging Defendants violated the FLSA (Count I) and PMWA (Count II).  He claims Defendants agreed to

3

pay K-9 handlers for at-home dog care and the FLSA and PMWA require Defendants to compensate him for it, but Defendants have willfully refused to do so.  (*Id.* at Count I ¶¶ 5–8, 11, 22, Count II ¶¶ 6–9, 11–12.)  Thus he is entitled to, but has not received, fifteen hours of time or time and a half compensation weekly for the period he cared for three dogs and ten hours of time or time and a half compensation weekly for the period he cared for two dogs.  (*Id.* at Count I ¶¶ 15–20, 23–27, 29, Count II ¶¶ 11, 14.)

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* (Mot. to Dismiss 9–19, ECF No. 23).  They argue the Sheriff and Controller's Offices are improper parties to the lawsuit, McKinney has not plausibly alleged an overtime claim under the FLSA or PMWA, they cannot be sued under the PMWA and the statute of limitations precludes McKinney from asserting FLSA claims prior to April 2, 2018.  *See* (*id.*).  Defendants also move to strike certain paragraphs of the Amended Complaint as immaterial, impertinent or scandalous under Federal Rule of Civil Procedure 12(f)(2) and for a more definite statement as to certain allegations under Federal Rule of Civil Procedure 12(e).

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

District Courts in the Third Circuit "may grant a Rule 12(b)(6) motion on the basis of an affirmative defense '*if* the predicate establishing the defense is apparent *from the face of the complaint.*'" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis in original)); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."). A defendant bears the burdens of production and persuasion for an affirmative defense. *See Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).

III

A

As an initial matter, there appears to be no dispute between the Parties that Chester County should be the proper defendant in this lawsuit.  Defendants argue McKinney cannot assert claims against the Sheriff and Controller's offices because they are subunits of Chester County with no independent legal existence.  *See* (Mot. to Dismiss 9–10); *cf. Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n.2 (3d Cir. 2014) ("[A] city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.") (citing *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993)); *Clements v. Del. Cty. Court of Common Pleas Domestic Rels. Office*, No. 19-1232, 2019 WL 1596361, at *2 (E.D. Pa. Apr. 11, 2019) ("as a matter of law, a sheriff's office is merely a subunit of the county").  Listing the two offices in the case caption in their "municipal capacity only" does not legitimize their inclusion because they cannot be sued in any capacity.  (Reply 1, ECF No.27.)  McKinney agrees his Amended Complaint brings an action against Chester County only and says he was willing to stipulate to this with Defendants.  (Pl.'s Resp. 5, ECF No. 26.)  Nonetheless, he apparently believes listing the offices in their municipal capacity but "not as separate entities" in the case caption is appropriate.  *See* (*id.*)

To be clear, all purported claims against the Office of the Sheriff and Office of the Controller are dismissed with prejudice.  Because nonparties to a case do not belong in the case caption, the Court will order amendment of the case caption to identify Chester County as the sole Defendant.

B

The FLSA requires employers "to pay their employees at least a specified minimum hourly wage for work performed . . . and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (citing 29 U.S.C. §§ 206, 207). The PMWA similarly requires employers to pay employees at least the minimum wage specified in the FLSA and no less than one and one-half times their regular wage for hours worked over forty per week. *See* 43 P.S. § 333.104(a), (c). "Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework." *Bansept v. G&M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020).

To state a plausible FLSA overtime claim, "a plaintiff must sufficiently allege [forty] hours of work in a given week as well as some uncompensated time in excess of the [forty] hours." *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (internal quotations and citation omitted) (emphasis in original). A plaintiff need not "identify the exact dates and times that [he] worked overtime." *Id.* at 243. Rather, he must provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." *Id.* (citing approvingly *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013). For instance, "a plaintiff's claim that [he] 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he . . . worked during one or more of those forty-hour weeks, would suffice." *Id.* (emphasis in original).

7

Chester County argues McKinney has not asserted a plausible claim for overtime because he does not allege the hours for which he claims overtime correspond to weeks where he worked more than forty hours. *See* (Mot. to Dismiss 17–19). The Court agrees.

None of McKinney's allegations demonstrate he earned overtime under the FLSA or PMWA. He alleges he "generally" worked forty hours per week and eighty hours per bi-weekly pay period. He asserts he cared for his K-9 partners daily, but does not state he worked forty hours in any given week *and* spent additional hours caring for them. He says he had to be on call 24/7, but does not allege he is owed overtime because he was on call. Moreover, he does not allege he was ever actually called in off-duty or that his being on call ever caused him to work over forty hours in a week. He claims Defendant engaged in a "willful policy, pattern or practice of permitting and/or requiring" him to work over forty hours per week, but he does not allege a single week where he worked more than forty hours. His example that between April 15 and April 28, 2017 he worked eighty hours but was not compensated at one and one-half times his rate for ten hours of at-home care fails to allege he earned overtime: eighty hours over two weeks suggests he worked only forty hours each week. The example does not say whether his eighty hours included at-home care.

McKinney's allegation that a bookkeeper calculated he was underpaid by thousands of dollars for several years also fails to state a plausible claim for relief. Reading the Amended Complaint, which is far from a model of clarity, in the light most favorable to McKinney, the Court cannot discern whether McKinney is attempting to allege he was underpaid because he worked more than forty-hour workweeks with his

8

at-home care responsibilities, because Chester County's purported K-9 handler compensation policy provides overtime regardless of his weekly work hours or for an entirely different reason.  The Amended Complaint alleges both that McKinney is entitled to one and one-half times his hourly rate for at-home care any week he worked forty hours or more "and as otherwise agreed with Defendant Chester County" and that "additionally and/or alternatively, any hours not compensable at 1.5 times the hourly rate are compensable at the hourly rate."  (Am. Compl. Count I ¶¶ 17–20, 29(d), Count II ¶ 14(a).)[2]

Counts I and II are dismissed in their entirety for their failure to plausibly allege claims for relief under the FLSA or PMWA. *See Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 566–67 (E.D. Pa. 2017) (dismissing FLSA overtime claims for plaintiffs that "failed to allege a single workweek in which they worked forty hours and were also not compensated for their overtime"); *Ford-Greene v. NHS. Inc.*, 106 F. Supp. 3d 590, 611 (E.D. Pa. 2015) (finding FLSA overtime claim "fatally deficient" where plaintiff did not "allege[] she worked extra 'off the clock' hours in a particular week where she had already worked forty hours prior to undertaking 'off the clock' work").

i

A cause of action under the FLSA "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation

---

[2]     McKinney claims he is entitled to overtime pay on any day he worked more than eight hours and that a "President Judge" agreed to this.  *See* (Am. Compl. ¶ 36, Count I ¶¶ 14, 19, 25, Count II ¶ 6).  Neither the FLSA nor the PMWA require employers to pay employees overtime rates for workdays that exceed eight hours—both set overtime requirements for work *weeks* that exceed forty hours.  *See generally* 29 U.S.C. § 207; 43 P.S. § 333.104; *see also Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007).  And McKinney has not alleged how or why any separate agreement he or any Deputy Sheriffs made with a "President Judge" shows Defendant violated the FLSA or PMWA.

may be commenced within three years after the cause of action accrued."  29 U.S.C.

§ 255(a).  "[W]illfulness under the FLSA is established where 'the employer either knew

or showed reckless disregard for the matter of whether its conduct was prohibited.'"

*Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2020) (quoting *McLaughlin v.*

*Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Chester County argues McKinney's

FLSA claims for overtime accrued more than two years before he filed his initial

Complaint should be dismissed because he failed to establish that the County

committed a willful violation.  *See* (Mot. to Dismiss 11–12); (Compl. 2, ECF No. 1).

McKinney cannot establish a willful violation of the FLSA because, as explained above,

he has not plausibly alleged a violation of the statute in the first instance.

C

The PMWA defines an "employer" bound by the Act as "any individual,

partnership, association, corporation, business trust, or any person or group of persons

acting, directly or indirectly, in the interest of an employer in relation to any employee."

43 P.S. § 333.103.  Chester County argues it cannot be sued under the PMWA because,

as a political subdivision of the Commonwealth, it is not an employer.  *See* (Mot. to

Dismiss 13); *Chester Cty. v. Philadelphia Elec. Co.*, 420 Pa. 422, 218 A.2d 331, 332 (Pa.

1996) ("The county is merely a political subdivision of the Commonwealth; not a

municipal corporation.").  McKinney responds Chester County can be sued because it is

a "person" under Pennsylvania's Statutory Construction Act, which "[i]ncludes a

corporation, partnership, limited liability company, business trust, other association,

government entity (other than the Commonwealth), estate, trust, foundation or natural

person."  1 Pa. Cons. Stat. § 1991; *see also* (Pl.'s Resp. 16).  He argues the Construction

10

Act's definition of "person" applies to the PMWA, and the PMWA thus permits suit against a government entity such as Chester County. *See* (*id.* at 16–19).

In *Morrow v. Cty. of Montgomery*, No. 13-1032, 2014 WL 348625 (E.D. Pa. Jan. 31, 2014), as the Parties do in this case, Montgomery County argued it was not an employer as that word is defined under the PMWA while Morrow contended that the County was a person as that term is defined under the Construction Act. *Id.* at *2. The court noted the Construction Act's definitions apply to any Pennsylvania statute "unless the statute's context clearly indicates otherwise." *Id.* (citing 1 Pa. Cons. Stat. § 1991). It observed that the PMWA defines "employer" by expressly listing only some of the entities the Construction Act defines as "persons," and accordingly held the Construction Act's definition of "person" does not apply to the PMWA. *Id.* It added that "had the legislature intended to include government entities in the PMWA, it would have done so explicitly." *Id. Morrow* has it right. Chester County is not subject to suit under the PMWA.

IV

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations. *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019). McKinney may amend Count I consistent with this Memorandum and to the extent he can allege facts sufficient to state a plausible claim for relief.

Because the Court has dismissed, for now, all claims in the Amended Complaint, it need not address Defendant's motions to strike or for a more definite statement.

11

An appropriate Order follows.

BY THE COURT:

_/s/ Gerald J. Pappert_

GERALD J. PAPPERT, J.