**IN THE UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF PENNSYLVANIA**

HARRY MCKINNEY
    Plaintiff

v.

CHESTER COUNTY
    Defendant

Civil Action No. 2:20-CV-1756-GJP

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
By:    John P. Gonzales, Esquire
Identification No.: 71265
2000 Market Street, 24th Floor
Philadelphia, PA 19103
(215) 575-2600
*Attorney for Defendant,*
*Chester County*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I)  Introduction ................................................................................................................ 3

II)  Legal Argument ......................................................................................................... 3

   A)     Standard for Summary Judgment Motion. .......................................................... 3

   B)     Plaintiff's Motion Should Be Denied, as Plaintiff is not Entitled To Any Overtime Under The FLSA. ......................................................................................................... 4

   C)     There Are Genuine Issues of Fact Concerning All of the Liability Issues Raised by Plaintiff.......................................................................................................................... 4

III)    Conclusion ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630 (7th Cir.2001) ............................................... 11

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ........................................................... 4

*AstenJohnson, Inc. v. Columbia Cas. Co.,* 562 F.3d 213 (3d Cir. 2009) ..................................... 12

*Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991) ........................................................... 4

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ..................................................................... 3

*Hanna v. Giant Eagle Inc,* 777 Fed. Appx. 41 (3d Cir. 2019) ...................................................... 11

*Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir. 1985) ........... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) .............................. 4

*Ne. Pennsylvania Freethought Soc'y v. Cty. of Lackawanna Transit Sys.,* 327 F. Supp. 3d 767

(M.D. Pa. 2018) ......................................................................................................................... 11

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC,* 40 F.Supp.3d 437 (E.D. Pa. 2014) ........ 11

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.,* 250 F.R.D. 203 (E.D. Pa. 2008) ............ 11

**Statutes**

16 P.S. § 1730(a) ............................................................................................................................ 9

29 U.S.C. § 213(a)(1) ..................................................................................................................... 4

Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ..................................................... 4, 10

**Rules**

Federal Rule of Civil Procedure 56(c) ........................................................................................... 3

Federal Rule of Civil Procedure Rule 30(b)(6) ....................................................................... 11, 12

## I)  Introduction

In this case, Plaintiff has filed a motion for partial summary judgment on a limited basis concerning six issues of liability.  More generally, Plaintiff is asking this Court to find, as a matter of law, the content of the County policy for compensation due to K-9 handlers for the care of the dogs in their care, the terms of that policy, that McKinney had certain dogs assigned to him, and his entitlement to certain compensation for those dogs.

However, Defendant asks this Court to deny Plaintiff's motion, because there are genuine issues of fact as to whether Plaintiff was an exempt employee, what policy governed that compensation, and how many dogs the Plaintiff had responsibility for.  Because these questions also require a jury to determine the credibility of Plaintiff and his primary witness, summary judgment is inappropriate.

## II)  Legal Argument

### A)  *STANDARD FOR SUMMARY JUDGMENT MOTION.*

The standards for deciding a motion for summary judgment are well settled.  Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact or that the party is entitled to a decision as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets that burden, the non-moving party must present evidence that establishes the existence of a genuine issue of material fact which must be resolve at trial.  Id. at 324; Jersey Cent. Power & Light Co. v. Lacey

Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  A non-moving party need only present evidence that creates a genuine issue of material fact in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Material facts are those facts that might affect the outcome of the action under governing law.  Id. at 248.

Further, the evidence in the case must be viewed in the light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Further, the judge need not credit the movant's unsupported statements of fact or legal assertions. Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (Courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences.'")

      B)      PLAINTIFF'S MOTION SHOULD BE DENIED, AS PLAINTIFF IS NOT ENTITLED TO ANY OVERTIME UNDER THE FLSA.

Defendant has filed a motion for summary judgment, demonstrating that Plaintiff was not entitled to any overtime under the FLSA because he was exempt under 29 U.S.C. § 213(a)(1). [See, ECF No. 49]  That motion is incorporated herein by reference in its entirety.

For the reasons set out in that motion, Plaintiff's Motion for Partial Summary Judgement should be denied.

      C)      THERE ARE GENUINE ISSUES OF FACT CONCERNING ALL OF THE LIABILITY ISSUES RAISED BY PLAINTIFF.

In Plaintiff's Motion for Partial Summary Judgment, he raises six interrelated issues concerning the content of the policy which applied to compensate K-9 handlers for care of their dogs.  However, there are genuine issues of fact as to all of them.  As such, Plaintiff's Motion for Partial Summary Judgement should be denied in its entirety.

First, Plaintiff asserts that the County policy from was for K-9 Deputies to be entitled to 45 minutes, 7 days per week, as either overtime or compensatory time.  Defendant, by contrast,

contends that during the time at issue in this case, under the County's overtime policy, K-9 handlers were only entitled to the equivalent of 3.5 hrs. of comp time, or overtime but only if they actually otherwise worked 40 hours per week at the straight time rate, and without regard for the number of dogs which the K-9 handler cared for.

Chief Deputy Sheriff George March (ret.) ("/GPM") memorialized the policy in an email chain in response to an email by Sheriff Carolyn Welsh.  The 2014 email read:

> [K-9 handlers] are entitled to the equivalent of 3 1/2 (usually rounded to four) hours overtime or comp time each week for canine care. That is a total of 12 hours comp time each pay period. (My understanding of what I read about this separately, is that overtime pay or other types of overtime rate compensation is _required_ only if _more_ than 40 hours per week is actually paid at the straight time rate._  In other words, if instead of working a full 40 hour week they are providing time during the week time for canine care (either day by day or accumulated to be taken on a single day during the week), the actual hours _worked_ less than 40 and the actual hours _provided_ for canine care added to that _to total 40 hours_ is at a _straight time_ rate._  On the other hand, If they do actually work a 40 hour week, they must be compensated at time and a half for the extra time (time in excess of 40 hours) allotted for canine care, either paid time and a half for the extra hours of canine care, or given comp time at the time and a half rate for the extra hours of canine care (the hours that were not provided for in the midst of a 40 hour week). Bottom line, the _only_ way they can get comp time later at a time and a half rate is if they _first_ actually work 40 hours during a week, _without_ time being provided for canine care. /GPM.)
>
> That requirement can be satisfied by giving them a day off every other week. (This is not comp time; it's time provided at the straight time rate for canine care during a 40 hour week, would be counted as hours within the total 40. /GPM) and an additional four hours comp time each pay period ("comp time" is only available to use if time is _not_ provided for canine care during a 40 hour week; in which case the extra time for canine care beyond 40 hours is compensated at a rate of time and one half as "comp time", that being one and a half hours off (paid at the straight time rate) for each hour of canine care not provided during a 40 hour week. /GPM.)

> The four hours can be achieved by permitting them to start their
> day at 9:00 instead of 8:00 AM for four days during the pay period.
>
> Or they can leave early for four days during a pay period.

(Exhibit 1, emphasis in original)  Chief Deputy March confirmed that that was the policy during

his tenure, through 2017.  (Plaintiff's Exhibit D March dep at 16:15-17):

> The policy and practice that was, that was in place when I was
> there would be 30 minutes per day, seven days a week which
> would calculate to three and one half hours and rounded up to four
> and it was not overtime. It was time on the schedule where a K-9
> handler would not be required to do their normal in-house in the
> office duty. They would be given the option of either appearing
> one hour later than normal, leaving one hour sooner than normal or
> accumulating those four hours into a single day during the week
> where they could appear or depart four hours sooner or later. There
> was no monetary overtime compensation.

(Plaintiff's Exhibit D March dep at 13:19-14:6)  He further confirmed that the policy was

memorialized the email previously quoted.

> Q:    Was that a written policy or procedure, like a formal
>       written policy or procedure, if you know?
>
> A:    It was reflected to my recollection in e-mail and also,
>       where I had, once Deputy McKinney and I had coordinated
>       with the sheriff that that's what the policy would be, we had
>       a gathering of the K-9 handlers in the conference room
>       where that was explained to them and that is what occurred
>       after that period of time.

(Plaintiff's Exhibit D March dep at 14:7-14)

Former Sheriff Carolyn Welsh, who is Plaintiff's romantic partner of many years,

testified that sometime after 2014 and 2019, she changed the policy, although she did not know

exactly when that change occurred.  She testified, "Yes, there was a change.  I cannot tell you

exactly when,... we went back to five hours a week...," which permitted to permit K-9 Deputies

to claim 45 minutes, 7 days per week, as either overtime or compensatory time.  (Plaintiff's

Exhibit C Welsh dep., at 33:15-34:24)

The County, however, had approved no change to the policy which Chief Deputy March

had described, until April 2019.  At that time, the County directed that a new policy be

promulgated to the K-9 handlers which changed the policy to require K-9 handlers to provide for

the canine's needs during a 30-minute period and to work the remining 7.5 hours of their day, so

as to not incur any overtime or comp time, except for one hour of overtime (for the care given on

weekends).  An email from Chief Deputy Jason Suydam was sent to Mr. McKinney and the other

K-9 handlers, conveyed the new policy:

> It has been directed by the Chester County Commissioners that the
> previous agreement between you and Sheriff Welsh regarding K-9
> care time (in their opinion) is no longer valid.  The Commissioners
> have directed that you follow their newly drafted policy as seen
> below, and comply with the Kronos timekeeping codes as provided
> by the Chester County Controller's office (Payroll).
>
> Effective immediately
>
> K-9 Handler Compensation
>
> Daily feeding, grooming and other canine needs during the
> work week (M – F) is allotted as 30 minutes, which is time
> included in Hours Worked (7.5 hours per day/.5 hours
> canine care). Therefore, while designated and paid for 8
> Hours Worked, the Deputy would be required to be "on
> site" for only 7.5 hours. For weekend canine care, a daily
> allotted time of 30 minutes may be identified as overtime.
> Therefore, in any given week, a Deputy canine handler
> would accrue only 1 hour of overtime, after having worked
> 40 straight time hours. Special events and/or call out
> incidents requiring canine handler attendance, outside of
> and in addition to the K-9 handler's daily shift, must be
> departmentally approved and identified as overtime.
> Detailed records delineating the special events and call outs
> must be kept. An overtime Kronos code for this specific
> overtime will be utilized to designate and record such time.

> Large disparities in overtime use will be scrutinized by
> Payroll and referred to HR for response.

(Email with New Policy, Exhibit 2)  Chief Deputy Suydam confirmed this change in policy, but

highlighted that there was a disagreement between the County and the members of the Sheriff's

department as to what the policy should be:

> Q:   Yes. Do you recall any discussions within the office about
> whether the at-home care time of a K-9 handler should be
> incorporated into their regular workday?
>
> A:   Yes.
>
> Q:   And can you tell me about those discussions, who were
> they with, when did they occur, and what was the ultimate
> decision?
>
> A:   I would say I had a multitude of discussions about this
> topic. From what I can remember, the county's position was
> that it should be included in the workday and the sheriff
> and the solicitor's position was that it shouldn't.

(Plaintiff's Exhibit A Suydam dep at 15:24-16:12).  Dawson Muth, former Sheriff's office

solicitor, for his part, agreed that there was a disagreement between the County and Sheriff as to

the contents of the policy and that the County enforced the change in 2019 in order to return to

the practice set out in Chief Deputy March's email:

> Q:   And what was the change that the county was proposing?
>
> A:   They were proposing to take it back to I think three and a
> half hours. They somehow found that e-mail from George
> March and decided that that was the policy that we had
> enacted and that they were going to follow George March's
> e-mail which that had never, was not the policy that was in
> place at the time George wrote that e-mail, but I'm not sure
> how the county even got that e-mail, but they went with
> that and that was when they decided they were going to
> change the policy.

(Plaintiff's Exhibit B Muth dep., at 25:11-21).

Thus, there are genuine issues of fact which require a jury to determine what the contents of the policy were, whether the compensation applied on a per-dog basis, and the conditions under which a deputy could obtain overtime rather than comp time.  As such, because these are all genuine issues of fact, summary judgment should be denied.

Furthermore, Plaintiff's argument as to the applicable policy for compensating K-9 handlers was supported in large part by the testimony of Sheriff Welsh and Plaintiff, himself. However, a jury is required to pass on the credibility of these witnesses.  On June 28, 2019, Chester County Controller Margaret Reif submitted the 2018 Financial Report, pursuant to Pennsylvania statute 16 P.S. § 1730(a).  The 2018 Financial Report included a Surcharge against Chester County Sheriff, Carolyn Welsh, in the amount of $67,335.25, to recover overtime paid to Harry McKinney, the plaintiff in this case, for overtime between January 1, 2016 and December 31, 2018.  (Report and Surcharge, attached as Exhibit 3)

The Surcharge by Controller Reif included an "Examination Report on Abuse of Overtime" which detailed the overtime paid to McKinney.  (Id.)  The Surcharge Action sets forth the Controller's findings that McKinney was paid $67,335.25 in overtime, from 2016 through to 2018.  (Id. at 29-31)  This overtime was nearly double the overtime paid to anyone else in the Sheriff's Office, making McKinney the highest-paid employee in the Sheriff's Office in each of the three years.  (Id. at 33, 41)  McKinney's overtime included 55 weeks in which he worked less than 40 hours, 30 weeks in which he worked less than 20 hours, and 19 weeks where he worked zero hours, but claimed and was paid overtime in all those weeks.  (Id. at 30)

On August 19, 2019, Sheriff Welsh filed an appeal from the Surcharge Action, which was docketed in the Chester County Court of Common Pleas at 2019-08315-CS, and is now pending.  (Appeal of Sheriff Welsh, attached as Exhibit 4.)  In that appeal, Sheriff Welsh

admitted that she and McKinney have lived together for more than twenty years, but claimed in defense that all the overtime paid to McKinney was proper and authorized under the FLSA. (Id., at 2-4.)

Furthermore, both Plaintiff and Welsh were criminally charged with theft related to overtime charges made to the County to offset costs of private events run for her personal charity, the Friends of the Chester County Sheriff's K-9 unit. (McKinney and Welsh criminal dockets, at Exhibit 5, attached) The charges resulted in pleas of *nolo contendere* by both Plaintiff and Welsh, and resulting in payments of fines and restitution.

Summary judgment in this case is therefore wholly improper because the existence of the Surcharge Action and the criminal charges. A jury will be required to determine whether Plaintiff and Welsh were being truthful that the County's policy actually entitled Plaintiff to 45 minutes per dog/per day, 7 days per week as overtime, or whether that testimony was presented as a way of bolstering Welsh's position in the Surcharge Action so as to avoid Welsh being liable for the $67,335.25 being sought, or because it advanced both Plaintiff and Welsh's defense in the criminal actions for theft.

Further, the fact that there is nothing in the record indicating that a claim for an entitlement to payment for three dogs was ever made until the Controller started investigating irregularities in the Sheriff's office may be seen by a jury as a basis to reject McKinney's and Welsh's testimony as lacking credibility.

In addition, the paystubs which were produced in discovery (attached as Exhibit 7) showed there were weeks and months were Plaintiff did not 40-hour weeks but was still paid overtime, regardless of whether he was on vacation or out sick. Indeed, to believe Plaintiff's position as to what the policy permitted him to receive as overtime would be entitling him to

10

more than the doubling of his regular salary just to care for these canines, even before consideration for special assignments and call outs.  A jury is entitled to consider whether the County would have permitted such an absurd result in determining what the policy actually was.

Thus, Plaintiff's motion for partial summary judgment should be denied.

Additionally, Plaintiff's argument is premised in part on the contention that the testimony of Chief Deputy Suydam, one of the County's Rule 30(b)(6) designee, constitutes a "concession" by Chester County, or that Chester County may not contest his testimony.  This is simply false.

The Courts of this Circuit have held that the testimony of a Rule 30(b)(6) designee is "not a judicial admission absolutely binding" on the designating party.  State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 212 (E.D. Pa. 2008) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103 (Supp.2007)); "[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes."  Id., quoting A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir.2001) (quotation omitted); Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC, 40 F.Supp.3d 437, 451 (E.D. Pa. 2014).

Rule 30(b)(6) testimony is not "something akin to a judicial admission.... This remains true whether the testimony speaks to factual or legal issues."  Hanna v. Giant Eagle Inc, 777 Fed. Appx. 41, 42 (3d Cir. 2019)(internal cites and quotes omitted.)  See, also, Ne. Pennsylvania Freethought Soc'y v. Cty. of Lackawanna Transit Sys., 327 F. Supp. 3d 767, 777 n.6 (M.D. Pa. 2018), rev'd on other grounds, 938 F.3d 424 (3d Cir. 2019) (consideration of evidence which differed from that offered by Rule 30(b)(6) designee permissible.)

Thus, while there is no doubt that Chief Deputy Suydam testified to the policy which the Sheriff's department followed during his tenure, there is no evidence presented that Chester

County authorized the change of policy from that which Chief Deputy March testified was in place from 2014.

Furthermore, the question which Plaintiff is proposing is, at least in part, a legal one: how much, if anything, does the law hold that Chester County owes the Plaintiff.  Chief Deputy Suydam may believe that Plaintiff was entitled to 45 minutes per dog/per day, 7 days per week as overtime, but his opinion on that legal question at issue is not binding on Chester County. AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 fn.9 (3d Cir. 2009)(Rule 30(b)(6) designee's interpretation of contract is the kind of legal conclusion that is not binding on the designating party, and designating party may off contrary evidence at trial.)

As such, a jury is entitled to review all this evidence and determine these issues.

Finally, the question regarding whether Plaintiff was entitled to claim for each dog is, likewise, not ripe for summary judgment.  The policy which Chief Deputy March testified was in place from 2014 did not make allowances for more than one canine.  Indeed, Plaintiff, himself, agreed that he was the only deputy who tried to house more than one canine.  (Plaintiff's Exhibit E McKinney dep at 92:15-20)  A jury would have to pass on what the policy stated.

Furthermore, additional evidence that Plaintiff was not entitled to compensation for three dogs was the fact that Plaintiff never sought compensation for more than two dogs, even under the policy which Sheriff Welsh allegedly implemented after the 2014 policy, although he allegedly spoke to her about it.  (Welsh dep., at 74-75).

A jury could reasonably find that the Plaintiff's decision not to seek payment for more than two dogs was since he did not believe himself entitled to compensation for three dogs and only later sought recovery for overtime for three dogs in order to retaliate against Chester County

because of the audit and Surcharge Action sought to recover from his partner the amounts she improperly permitted to be disbursed.

This is especially so, given the fact the relationship between Welsh and Plaintiff.  The jury might believe it lacking in credibility that, if the policy, indeed, entitled Plaintiff to payment for three dogs, Welsh would not act to ensure that he was paid that which she allegedly believed him to be entitled.

**III)     Conclusion**

For all the foregoing reasons, this Court is respectfully requested to deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully Submitted,

**MARSHALL DENNEHEY WARNER
 COLEMAN & GOGGIN**

By:     John P. Gonzales, Esquire
Identification No.:  71265
2000 Market Street, 24th Floor
Philadelphia, PA  19103
(215) 575-2600
*Attorney for Defendant:*
*Chester County*

Dated: November 29, 2021

**CERTIFICATE OF SERVICE**

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that on the date listed below, I caused a true and correct copy of Defendant's Brief in Opposition To Defendant's Motion for Partial Summary Judgment was electronically filed with the Court, and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

Dated: <u>November 29, 2021</u>          By: _____

JOHN P. GONZALES, ESQUIRE
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2871/F: (215) 575- 0856
jpgonzales@mdwcg.com
*Attorney for Defendant,*
*Chester County*

14