IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY McKINNEY, *Plaintiff,* v. CHESTER COUNTY, *Defendant.* | CIVIL ACTION NO. 20-1756 |

**PAPPERT, J.** May 25, 2022

## MEMORANDUM

Former Chester County Deputy Sheriff Harry McKinney claims the County violated the Fair Labor Standards Act by failing to pay him overtime for his care of three K-9 service dogs between April 2, 2018 and January 2, 2020. The County moves for summary judgment, and McKinney for partial summary judgment. After considering the record and the parties' submissions, the Court denies both motions in light of numerous, disputed material facts. This Memorandum points out just some of them.

I[1]

A

Summary judgment is proper if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it "might affect" the case's outcome "under the

---

[1] The Court presented the case's factual background in its February 5, 2021 memorandum. (ECF 28.) In this Memorandum, the Court cites to only those additional facts from the record relevant to its resolution of the parties' Motions for Summary Judgment. (ECF 49; ECF 50.)

1

governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial" and cannot "rest upon" pleadings. *Id.* at 252, 256. A court can consider any material in the record that may be admissible at trial, and must "view the facts in the light most favorable to the nonmoving party and draw all inferences" in its favor. *See* Fed. R. Civ. P. 56(c)(2); *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (internal quotation marks omitted).

Additionally, the court cannot make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Armour v. City of Beaver*, 271 F.3d 417, 420 (3d Cir. 2001)). The standard is no different for cross-motions for summary judgment, which the court must decide "on an individual and separate basis." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008); *Beneficial Mut. Sav. Bank v. Stewart Title. Guar. Co.*, 36 F. Supp. 3d 537, 544 (E.D. Pa. 2014) (internal quotation marks omitted).

II

The County moves for summary judgment on two grounds. First, it argues McKinney is exempt from the FLSA's overtime-pay requirement[2] for his care of three dogs—Afra, Jessie and Melody—because he worked for the County in a bona fide executive capacity. (Def's Brief in Supp. of Summ. J. Mot. 6–17.) Second, the County

---

[2] The FLSA requires employers to pay their employees at least time and a half for hours worked in addition to forty per week. 29 U.S.C. § 207(a). A noncompliant employer is liable to the affected employee for his "unpaid overtime compensation" and an equal amount of liquidated damages. § 216(b).

contends that to the extent McKinney ever had a right to overtime, it was limited by a policy the County instituted on April 16, 2019 requiring McKinney to care for his dogs during his regular work hours. (*Id.* at 17–19.) After that date, in the County's view, McKinney could earn only one half-hour of overtime on Saturday and Sunday for a total of one hour of overtime per week. (*Id.*)

A

The FLSA exempts certain employees from its overtime-pay requirement. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 213). It is the employer's burden to prove these exemptions apply. *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 359 (3d Cir. 2021) (internal quotation marks omitted).

One such exemption is for "bona fide executive" employees. § 213(a)(1). An executive employee is one (1) paid at least $684 per week[3] on a "salary basis"; (2) whose "primary duty" is managing the "enterprise in which the employee is employed" or of one of its "customarily recognized" subdivisions or departments; (3) who "customarily and regularly directs the work of two or more other employees" and (4) is authorized to "hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 CFR § 541.100(a).

The County has not carried its burden to show the executive-employee exemption applies to McKinney. *See Clews*, 12 F.4th at 359. As an initial matter, the County in response to McKinney's Motion asserts that "there are genuine issues of fact as to whether Plaintiff was an exempt employee, what policy governed that

---

[3] The County states the amount is $455 per week, which is outdated or otherwise incorrect. (Def's Brief in Supp. of Summ. J. Mot. 6, ECF 49.)

compensation, and how many dogs the Plaintiff had responsibility for." (ECF 52 at 3.) The record confirms this assessment and the County is thus hoist by its own petard.

Moreover, the executive-employee exemption categorically does not apply to "deputy sheriffs." § 541.3(b). The record evidence indicates McKinney was a "Deputy Sheriff I" throughout his tenure, though he was sometimes referred to by an "honorary title" of lieutenant. (Welsh Dep. 42:12–43:5, Pl. Ex. C, ECF 50-1); *see also* (Suydam Dep. 21:8–22:13 (lieutenant title didn't provide McKinney "anything" besides the title), Pl. Ex. A, ECF 53-2). For example, McKinney's pay stubs list his title as Deputy Sheriff I. *See, e.g.*, (Mar. 31, 2018–Apr. 13, 2018 pay stub, Def. Ex. C, ECF 49-3). Finally, the County's job description for that position states it is "Non-Exempt" under the FLSA. (Pl. Ex. 1, ECF 53-1.)

Even if the executive-employee exemption could in theory apply to McKinney, the County has not proven its four requirements are satisfied. *See* 29 CFR § 541.100(a). For example, with respect to the primary-duty requirement, an employee's "primary duty" is the "principal, main, major or most important duty" he performs. § 541.700(a). The County asserts McKinney's "primary duty" was managing the County's K-9 Unit. (Def's Brief in Supp. of Summ. J. Mot. 9–12.) The record evidence does not support this position.

For instance, the County's terms of service for K-9 deputies state their "primary responsibility" is "as a Deputy Sheriff," and that selection for the K-9 team does not relieve deputies of their "primary obligation to complete all duties and responsibilities" assigned by the sheriff, chief deputy or a supervisor. (K-9 Deputy Service Agreement, Pl. Ex. 4 ¶ 4, ECF 53-1.) Also, McKinney said deputy sheriffs ordinarily performed

"deputy work," such as patrolling or transporting a prisoner with a K-9 rather than standalone "K-9 work." (McKinney Dep. 91:22–92:3, Def. Ex. B, ECF 49-2.)[4]

B

Factual disputes also remain as to whether the County instituted a new K-9 deputy compensation policy that incorporated dog care into regular time and allowed for only one hour of overtime pay per week. *See supra* Part II. The County relies on an April 16, 2019 email from former Chief Deputy Suydam stating the new policy was "[e]ffective immediately." (Def. Ex. D, ECF 49-4.) But Suydam also said a different policy governed during his tenure as chief deputy, which ran from 2017 until October of 2019. (Suydam Dep. 10:6–11:14.)

Specifically, in an October 31, 2018 email, Suydam explained K-9 handlers would be compensated for "at-home care" of their dogs "in accordance with the [FLSA] and within the terms agreed upon with the Sheriff." (Pl. Ex. A (quoting June 27, 2018 K-9 Unit Policy Document 2 § XX.B), ECF 53-2.) Suydam further stated "[w]e decided and mutually agreed with the K-9 handlers that a reasonable compensation for canine handlers be at 45 minutes per day, seven days a week," equal to five hours per week—redeemable as overtime or comp time for each dog. (*Id.*)

Additionally, Dawson R. Muth, the Sheriff's solicitor from 2000 to 2019, said this was the K-9 handler compensation policy in place "from 2018 through the end of 2019." *See* (Muth Dep. 5:12–20, 6:14–20, 49:15–20, Pl. Ex. B, ECF 53-2). He further explained

---

[4] The County relies on former County Chief Deputy Jason Suydam's assertion in his "Affirmation" that McKinney's primary duty was "management of the K9 Unit." (Def. Ex. E ¶ 3, ECF 49-5.) But the Court can't grant summary judgment on the basis of affidavits that are "essentially conclusory and lacking in specific facts." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (quoting *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)).

that the County was not authorized to unilaterally change a compensation policy agreed to by the deputies and sheriff. (*Id.* at 51:4–9); *see also* (June 27, 2018 K-9 Unit Policy Document 2 § XX.B). According to Muth, the sheriff had authority to determine the policy, and Carolyn Welsh, the sheriff from 2000 to 2020, said she never approved the purported policy change. (Muth Dep. 51:21–52:3; Welsh Dep. 81:4–7.)

III

McKinney moves for partial summary judgment essentially on two issues, which restate the allegations in his Second Amended Complaint. First, he argues that between April 2, 2018 and January 2, 2020, K-9 deputies were owed five hours of comp time or overtime pay per week for at-home care of each of their K-9s. (Pl's Mem. of Law in Supp. of Part. Summ. J. Mot. 4, ECF 50). Second, McKinney contends he was entitled to compensation for care of three K-9s between April 2, 2018, and April 30, 2019, and two between May 1, 2019, and January 6, 2020. (*Id.* at 4–5.)

A

A reasonable jury could conclude K-9 deputies were not owed five hours of at-home care compensation each week per dog between April 2, 2018 and January 2, 2020. Notwithstanding Suydam's description of that compensation policy and related testimony, *see supra* subsection II.B, the record is unclear as to whether it was in effect in that timeframe.

George March, Suydam's predecessor as the Sheriff's Office chief deputy, said a different K-9 deputy compensation policy was in place while March served as chief deputy until May of 2017. (March Dep. 13:19–14:6, 16:15–17.) That policy called for K-9 deputies to receive three-and-a-half hours of overtime or comp time per week if they

first worked forty hours at regular time, regardless of how many dogs they cared for. (May 27, 2014 March email, Def. Ex. 1, ECF 52-1.) While March retired nearly a year before April 2, 2018, it is not clear that this policy was ever revoked and, if so, when. *See, e.g.*, (Def's Resp. to Pl's Statement of Material Facts ¶ 28).

Additionally, an audit by County Controller Margaret Reif found that between January 1, 2016 and December 31, 2018, K-9 care was included and "part of the regular work day since at least July of 2014, so as not to incur overtime for such care by K-9 handlers." (Welsh Surcharge ¶ 2, Def. Ex. 3, ECF 52-3.) Reif also found "no record" of the County "reviewing or approving any policy permitting any K-9 handler to claim overtime" for at-home K-9 care before the end of 2018. (*Id.*)

B

There are genuine issues for trial regarding the time periods and number of K-9s for which McKinney could be owed at-home care compensation. While McKinney assumes the governing policy authorized compensation for each of Afra, Jessie and Melody, the record shows a reasonable jury could find that policy was not in effect. *See supra* Section II.A.

For starters, whether McKinney is entitled to overtime pay for his three (or two) dogs is questionable. Reif found that between the start of 2016 and end of 2018, McKinney was paid overtime for fifty-five weeks when he worked fewer than forty hours, thirty weeks when he worked fewer than twenty hours and nineteen weeks when he worked zero hours. (Welsh Surcharge,[5] Overtime Claims, Def. Ex. 3, ECF 52-

---

[5] Reif filed a surcharge against Welsh, McKinney's housemate and partner for more than twenty years, to recover overtime payments made to McKinney in violation of County policy. According to Reif, from the start of 2016 to the end of 2018, McKinney was paid $67,335.25 in overtime, making him the Sheriff's Office's highest paid employee in those three years. (Welsh

3); *see also* (McKinney pay stubs (showing weeks between March 31, 2018 and January 3, 2020 where McKinney was paid overtime despite working fewer than forty hours), Def. Ex. C). McKinney also claimed as many as twenty-three hours of overtime for a single day and at least ten hours on many days. (*Id.* at Overtime Claims Totaling § 67,335.25.) The factfinder will need to sort this all out.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

Surcharge, Background, ¶ 1.) Reif found Welsh "used her authority to sign off on and authorize" overtime payments to McKinney. (*Id.* at Conclusion and Surcharge.) Welsh's appeal of the surcharge action is pending in the Chester County Court of Common Pleas. (Def. Ex. 4, ECF 52-4.) McKinney and Welsh also pleaded *nolo contendere* to theft charges stemming from the overtime payments. (Def. Ex. 5, ECF 52-5.) To the extent it is necessary, the Court takes judicial notice of these public litigation documents and developments. *See* Fed. R. Evid. 201(b) (courts can judicially notice facts "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *FCS Capital LLC v. Thomas*, --- F. Supp. 3d --- (E.D. Pa. 2022) (judicial notice "may be used in resolving a motion for summary judgment" (internal quotation marks omitted)).